Case number 171850, Dave Kindermann v. LFT Club Operations Company Mr. Bernthal, we have two photocopies. Good morning. I'm Mark Ronzato on behalf of the Plaintiff Appellant. As I've already advised your clerk, I'd like to reserve five minutes for my rebuttal. Twenty-six years ago, the Michigan Supreme Court decided a case called Riddle v. McLeod Steel. It adopted for the first time what has become known in Michigan as the open and obvious danger defense. Since Riddle was decided, as the court probably knows, it has completely changed the landscape, if you will, of Michigan premises liability law. It has generated countless cases, hundreds and hundreds of cases. This case, another premises liability case, has two factors in it, one of which I think is unique to the hundreds of cases that the Michigan courts have addressed on open and obvious danger. The other one is quite unusual in Michigan law with respect to open and obvious. The unique factor is I believe in every single case that the Michigan courts have encountered in the subject of open and obvious danger, the person who slips, the person who trips, is the person who's injured. This case is unusual, unique in fact, because the person who's injured in this case is not the person who tripped or slipped. It's the person who slipped or tripped who's carrying. The second unusual thing about this case, obviously, is that it involves a child, the injury to a child, and that is the nub, it seems, of the case because there is a dearth of Michigan case law, as the court probably knows, on the subject of how the open and obvious danger defense operates when you have a child. The one published Michigan Court of Appeals case on the subject is the Bregan case. Bregan recognizes that there are basically two strains of Michigan law on the subject, one of which is, of course, the open and obvious danger defense adopted by the Supreme Court in Riddle. The other one is the long line of Michigan case law that recognizes that the standard of care applicable to a child, a minor, is different than that which applies to an adult. For example, and it applies clearly in premises cases, the obvious example of that is the attractive nuisance doctrine. When a child is attracted to somebody's property and there's danger on the property, the Michigan courts have found, long line of cases, that even a trespassing child is entitled to protection in that circumstance. It's something that certainly would not apply to an adult. What the Bregan court ultimately found then was that they would recognize that the open and obvious danger defense does in fact apply to a minor, but it applies differently. It applies instead of to a reasonably careful adult, as it does in all the other cases involving adults, it would be construed from the perspective of a child, reasonably careful minor. The district court judge in this case did in fact recognize Bregan and did in fact recognize that Bregan required the perspective of the child. Then the district court, however, didn't apply the Bregan doctrine. It instead applied a doctrine that applied the adult standard, applied to the mother. I think I should tell you, in light of the dearth of the Michigan case law on this subject, I argued a case on Tuesday of this week in the Michigan Court of Appeals. I think the court should be aware of a case I argued, largely because there's so little case law in Michigan on this subject. I had a case on Tuesday before a panel of the Michigan Court of Appeals that does involve a number of factors in a play here. The question is whether the negligence of a parent can in fact be applied to a child's claim. It also will address the question, I assume it's going to address, obviously I'm not writing the opinion, the question of the open and obvious danger defense as it applies to a child, something that obviously Bregan addressed. The third issue that's involved in this case that I argued on Tuesday is whether the open and obvious danger defense even applies to a child under the age of seven, because Michigan law does recognize that the negligence of a child, excuse me, a child under the age of seven is incapable of negligence, either being sued for or being charged with comparative fault as a result. The case, just so the court knows, is Goodwin, G-O-O-D-W-I-N, versus Northwest Michigan Fair Association. The Michigan Court of Appeals number is 333963. In light of the fact that there is so limited Michigan case law on the subject, and I really do anticipate that Goodwin is going to be a published opinion because of the importance of the issues that are addressed in that particular case, I think the Goodwin case might be something that the court might have in its possession. I don't know how it's going to be decided. But the point is, under Bregan, the district court in this case should have adopted the perspective of the child. That's what Bregan says. Child is 21 months old, I believe. Does a child of that age have much of a perspective? Absolutely not, because think about this. Number one, the plaintiff in this case has to establish that this platform, whatever it is for motorcycles, is in fact negligent. That's not strict liability. I believe, if the defendant has protected its interest and is wide awake at any trial, I believe also that the mother's potential negligence would in fact be something, under Michigan law, that would subtract from any recovery that the child might have. So we have a situation where clearly the plaintiff has to prove that number one, it was in fact negligent to have this motorcycle mat or whatever you have. There's no strict liability to that. The negligence of the mother, now again, as I mentioned, Goodwin has that issue in it. There's a question of whether the parent's negligence could in fact be attributed, under Michigan law, to reduce the award that's rendered for the plaintiff, for the child. But this is pretty far from strict liability. And of course they have to prove causation as well. But I'm struggling to figure out that even if you had something which needed to be looked at under the open and obvious danger standard, but you're talking about somebody who can't perceive an open and obvious danger. We are talking about one defense. That's what the open and obvious danger is. It is one defense. The defendant has obviously multiple defenses to a case of this type. They would, I presume under Bragan, if Bragan applies in this situation, Bragan simply seems to say to me that this is a question that must be presented to the jury, whether it is in fact open and obvious from the perspective of the child. But the fact is that's the only defense they would lose if in point of fact this case gets reversed. Please, this is not a situation of some sort of automatic liability if they don't have open and obvious danger. Not correct. Just to follow up on Judge Batchelder's inquiry, I'm not following your argument here. The baby was too young to notice whether the condition was open and obvious and under the facts was being carried by the mother and was in the mother's bosom facing the mother. So the baby wasn't in a position to see anything. So whether the conditions were open and obvious to the child would seem to be irrelevant. The whole case turns on whether the conditions were open and obvious to the mother. Wouldn't you agree with that? No, I don't agree with that. I mean, I don't understand. It's impossible for the baby to have known anything about whether the condition was open and obvious. If that's true, and I assume a jury would be presented with that question, then they have lost this defense. That's all that's happened. They've lost this defense. There would be no need to present a defense of that nature to the jury because it's not a viable argument. We have an invitee. We have an invitee who suffers injury as a result of a condition on the property. That's a situation governed by Michigan premises liability law. The child is injured. The child is an invitee. My position is that this child is treated separately from the mother and treated like any other invitee. And that is, did this invitee have a perception of the danger presented to them? That's all. It's the separation of the mother and the child. That's what Bregan is about. So if the answer is no, then you would say that regardless of what the danger would have looked like to someone else, it's not open and obvious because a child with no ability to perceive it couldn't perceive it as being an open and obvious danger? Well, the fact is it's an objective test under Bregan. It's an objective test, a reasonable minor of the same age and capability. Have you got any kids? I'm sorry? The simple fact is we have a defense. It's an objective standard. That's what open and obvious danger has become in Michigan law. It's an objective standard. The question presented to the Bregan court was this, if you have an objective standard, a reasonable person standard, is that reasonable person standard going to apply to the injury to a child that occurs on somebody else's property? What the court of appeals said in that case was, no, we are not going to apply a reasonable person, parenthesis, adult standard. We are going to apply a reasonable minor of that child's capabilities. There's no question that if this child was walking and tripped over this thing, there is no question that that would, in fact, be governed by Bregan. No question. Now, the question is, is it different because he's being held in his mother's arms? And my suggestion is that Bregan does not admit of that exception. Thank you. Good morning, Your Honors, and may it please the Court. Anthony Castillo for defendant, LTF, Club Operations Company. With all due respect to Mr. Casanato, I don't understand why we're even talking about the minor. Because the fact that the minor was 21 months old versus 14 years old versus 21 years old is immaterial to this whole situation. The minor didn't have, and Judge Clay, you hit it on the head, the minor was being carried by his mother. He had no ability to do anything other than sit there and hang on. So whether or not he was able to appreciate that there was a slight elevation difference in the parking lot has nothing to do with this case. The question is, what duty did my client owe to these invitees under this circumstance? And what we know is that they don't contest that this is open and obvious. That's not being contested here. All they're arguing is that someone who actually wasn't the person that tripped on it shouldn't be subject to that doctrine. I would disagree with Mr. Casanato also that it's a defense, quote, unquote. What the open and obvious doctrine is in the State of Michigan is a definition of the duty owed by a landowner, a premises owner. It's not a defense. It sets forth what is the duty that that premises owner owes. And what we acknowledge in the State of Michigan is that there's something there to be seen, a quote, unquote defect. And I'm not conceding that this is a defect. This is a condition in the parking lot that you see everywhere. You can walk outside of this courtroom and see similar things that are intended to be there. They're claiming it's a quote, unquote defect. The second assignment of error here was whether the height differential was a dangerous condition. That is still before us. That's the second issue. The first issue is the open. And so the issue here is whether or not Lifetime Fitness, my client, even owed a duty to these invitees to warn or protect them from this quote, unquote defect. The fact that the injured party was 21 months old has nothing to do with it in this situation because he was not the one that tripped. This is no different. What if this situation occurred? I'm walking in front of Mrs. Kinderman in the parking lot. I managed to avoid the change in elevation, but she trips and falls into me and I tear my ACL because she falls into me. Now what caused that? Her tripping on the quote, unquote defect. Do I have a cause of action against Lifetime Fitness? I'm a 47-year-old male who can appreciate what's going on there. I'm an invitee. Do they owe me a duty? Because I wasn't the one that actually stubbed my toe on it and fell, but I was an innocent bystander that got hurt. No. I suppose in theory you could sue both people, couldn't you, if your claim was it wasn't open and obvious, but I still saw it. But the person behind me didn't and it wasn't open and obvious. So we'd have a three-party. Exactly. I would have a claim against Mrs. Kinderman for being negligent and tripping and falling into me, but would Lifetime Fitness under that circumstance owe me a duty? They wouldn't. And that's what Michigan law says. The purpose of the open and obvious doctrine is, and you have this here to a lesser extent than we do up in Michigan, but we can't, with the free law cycles, it's an acknowledgement that it would be economically impossible for premises owners, business owners to make completely flat services everywhere. It's an acknowledgement that, look, life is not perfect, our world is not perfect, and you can't force a business owner to make sure everything is completely flat. So if there's something there to be seen, it's there to be seen, and a business owner does not have a duty to warn or protect of it. That's immaterial. We have case law in the state of Michigan where someone that's blind trips and falls over something. There's no duty owed to a blind person that's any greater than someone with sight. If you're carrying a package in front of you and you can't see, that's immaterial. This is the same situation here. The court got this right. Judge Lawson hit it on the head. This is what he said. In his opinion, whether a reasonable two-year-old being carried by his mother would discover the danger and appreciate the risk of harm posed by the motorcycle parking pad is immaterial. The relevant inquiry, as in Robinson, which was a case I relied on in the lower court, is whether an average person with ordinary intelligence would have discovered the elevated motorcycle parking pad in the parking lot upon casual inspection. The relevant inquiry was what duty did we owe? We didn't owe the 21-month-old child that got hurt any heightened duty because he was being carried in his mother's arms that day. In my circumstance where I get injured by Mrs. Kinderman falling into me, Lifetime didn't owe me any heightened duty because I wasn't the one that directly tripped on the alleged defect. None whatsoever. We can't have that. We can't separate it based on, well, okay, this invitee directly got injured versus being caught in the collateral damage by someone who tripped and fell. That's not what the law in the state of Michigan is here. The one case that's being relied upon, this Bragging case, means nothing to this case. That's a case where there was an attractive nuisance in a barn. An 11-year-old child climbed a Jacob's ladder 10 feet up and fell and broke his wrists. And the question was whether or not he was old enough to appreciate that there wasn't enough straw beneath the ladder in the event that he fell to cushion his fall. That was the relevant inquiry in that case. Not similar at all to what we have here. The second aspect of, I was granted summary judgment on the open and obvious doctrine, but I had also argued that what we're looking at here is not an unreasonable danger. It's a parking lot. It's an intended motorcycle parking pad that is put there because if you put your kickstand down on an asphalt parking lot, especially during the summer months, there's a good chance that your kickstand's going to start sinking into the asphalt. You will see it in a lot of parking lots. There are dedicated motorcycle parking pads. This was one of them. Was there a slight height differential between the asphalt and the concrete? Yes, there was. It was maybe an inch, but it was an intended feature of the parking lot. It was not a defect. It was not something that had heaved. It was not a pothole. It wasn't cracked. So what are we talking about here? If there's steps from the parking lot up to the sidewalk, is that a defect because someone may have missed it? No, it's not. That's an intended feature. Just because someone trips and falls on something doesn't automatically make it dangerous or make it a defect. That's what we have here. Thank you, Counsel. On the last point, the question of negligence, the liability, Judge Lawson did make a very important point. The pictures showed that one side of this pad had in fact been chiseled down. The fact that one side had been chiseled down convinced Judge Lawson, at least in his opinion, that it was a recognition that the defendants were aware of some danger presented by that. That is enough for the issue of negligence in this particular case. The suggestion that you can have an intentional design become automatically immune from liability in Michigan law, as Judge Lawson points out, is far-fetched to say the least. Let me say something about duty in premises liability law in light of the arguments that's been made. Duty in premises liability law is completely different than duty in any other area of Michigan law in one very important respect. That is, if I manufacture a product, for example, my duty exists before there's any injury. My duty is I have to design that product correctly before there's any injury. That's my duty. What's different about duty in Michigan premises liability law is it's not determined, believe it or not, until after an injury occurs. Why is that? It's because the who gets injured and the character of who gets injured does, in fact, have to be factored into the question of duty. The most obvious example is trespasser, licensee, invitee. We don't know who's going to be injured. And the fact is that Michigan has adopted one other characteristic of the person being injured as reflective of duty, and that's minority status. That's what Bragan is about. We can't talk about duty before the injury occurs because we don't know who has been injured. Because who gets injured counts under Michigan premises liability law. Thank you, counsel. The case will be submitted and there being no further matters to be argued before the court this morning, the clerk may adjourn the court.